## PETERSON v. EVANS, Judge, et al.

No. 3423.   Decided February 28, 1920.   (188 Pac. 152.)

1. MANDAMUS—WILL LIE TO COMPEL DISTRICT JUDGE TO BRING CAUSE TO TRIAL.  Mandamus will lie to compel a district judge to take steps necessary to bring a cause to trial, where he has improperly suspended proceedings by reason of plaintiff's failure to pay costs of a prior action, under Comp. Laws 1917, sections 7391, 7392.[1]   (Page 507.)

2. COSTS—NEW ACTION HELD NOT PRESUMPTIVELY VEXATIOUS SO AS TO STAY SECOND ACTION UNTIL PAYMENT OF COSTS.  Where an action is dismissed without prejudice, a second action commenced, within due time, under Comp. Laws 1917, sections 6484, 6848, 6859, is not presumptively vexatious, and the trial court cannot, in the absence of a showing that the second suit is in fact vexatious, grant an order suspending further proceeding in the cause until payment of a judgment for cost rendered in the first case.   (Page 517.)

Mandamus by Bengt A. Peterson to compel *P. C. Evans,* as District Judge of Salt Lake County, to take steps to bring a certain cause to trial.

ALTERNATIVE WRIT MADE PERMANENT.

*Marioneaux & Beck,* of Salt Lake City, for plaintiff.

*Dickson, Ellis & Lucas,* of Salt Lake City, for defendants.

CORFMAN, C. J.

[1] *Ketchum Coal Co.* v. *Pleasant Valley Coal Co.,* 50 Utah, 395, 168 Pac. 86; *State* v. *Hart,* 19 Utah, 439, 57 Pac. 416.

This is a proceeding in mandamus. Plaintiff made application for an original writ of mandamus to issue from this court commanding the defendant P. C. Evans, as district judge of Salt Lake county, to proceed to rule and take such steps as may be necessary to bring a certain cause to trial brought by the plaintiff in said court against the defendants Utah Copper Company and Charles Shaw. An alternative writ was issued. The defendants have appeared and filed herein a general demurrer, return, and answer to the plaintiff's application. For convenienece we shall hereinafter refer to the parties as plaintiff, defendants, and district judge.

The admitted facts are: On November 15, 1917, the plaintiff commenced an action by filing a complaint in the said district court of Salt Lake county against the defendants for the recovery of damages alleged to have been sustained by him through the negligence and carelessness of the defendants while he was in the employ of the defendant Utah Copper Company. The defendants answered, and thereafter said' cause, designated in said court as case No. 24169, was brought on for trial before a jury. At the trial, after plaintiff had introduced his testimony and had rested his case, defendants moved for a nonsuit. The motion was opposed by plaintiff. The district judge, after taking the motion under advisement, caused a judgment of nonsuit to be entered and the plaintiff's complaint to be dismissed without prejudice. Thereupon the defendants, in due time, prepared, served, and filed a memorandum of their costs and disbursements in said cause No. 24169 amounting to the sum of fifty-five dollars and twenty cents, for which judgment was duly docketed against the plaintiff in favor of the defendants. Thereafter, May 25, 1918, the plaintiff commenced a new action in said court by filing a complaint against the defendants in conformity with the rulings and decision of the district judge on said motion for nonsuit in said former cause No. 24169, involving, however, the same issues and alleging the same liabilities on the part of the defendants as before alleged. In conjunction with the filing of the latter complaint the plaintiff filed an affidavit of impecuniosity to the effect that, owing to his poverty, he

was unable to bear the expenses of the new suit thus commenced, designated in said court as case No. 25064. Thereafter, June 14, 1918, the defendant Utah Copper Company filed in cause No. 25064 a general demurrer to the complaint and also its demand, supported by affidavit, for the unpaid costs in the former cause, No. 24169, and thereupon moved the court for a stay of proceedings until such costs shall have been paid by plaintiff. Thereafter, June 26, 1918, the plaintiff duly noticed the defendants of his intention to call up said demurrer to the complaint, and July 6, 1918, the said district judge entered an order that the hearing on said demurrer be continued without date. Thereafter, July 31, 1918, the district judge caused an order to be entered granting defendant's said motion to suspend further proceedings in said cause No. 25064 until payment of costs taxed against plaintiff in the former cause No. 24169 shall have been made. Thereupon plaintiff instituted the present proceeding.

It is first contended by the defendants that mandamus will not lie in the present suit; that the order of the district judge complained of by the plaintiff wherein the proceedings in cause No. 25064 are stayed until payment of the costs in cause No. 24169 shall have been paid is in effect a final judgment, and therefore the plaintiff's remedy is by way of appeal rather than by mandamus proceedings, as was held by this court under the facts disclosed in the case of *Ketchum Coal Co.* v. *Pleasant Valley Coal Co.*, 50 Utah, 395, 168 Pac. 86, and other cases cited in defendants' brief.

In view of the facts hereinbefore stated, without pausing to here cite or discuss the many decisions of this court referred to in defendants' brief bearing on the question, 1 we are clearly of the opinion that they have no application in the present case, and that mandamus is the proper remedy. The facts and circumstances in the Utah cases cited and relied on by the defendants are entirely dissimilar.

Under our statute (Comp. Laws Utah 1917, section 7391) it is provided that a writ of mandate may be issued to an inferior tribunal "to compel the performance of an act which the law specially enjoins as a duty resulting from an office,

trust, or station; or to compel the admission of a party to the use and enjoyment of a right * * * to which he is entitled and from which he is unlawfully precluded by such inferior tribunal." The plaintiff contends that under the mandates of our organic and statutory laws he is being denied a substantial right, the right to prosecute a meritorious action, a right which the law specifically accords to him; further, that he has no "plain, speedy, and adequate remedy in the ordinary course of law." Comp. Laws Utah 1917, section 7392; *Craig et al.* v. *Norwood,* 61 Ind. App. 104, 108 N. E. 395; *Weile* v. *Sturtevant,* 176 Cal. 767, 169 Pac. 688; Merrill on Mandamus, sections 203, 204; *State* v. *Hart,* Judge, 19 Utah, 438, 57 Pac. 416. In the case last cited it is said:

"It is now well established that, when an inferior court has refused to entertain jurisdiction on some matter preliminary to a decision of a case before it on the merits, or refuses to act when the law requires it to act, or where, having obtained jurisdiction in a case, it refuses to proceed in the exercise thereof, a writ of mandamus is a fitting and proper remedy to set such court in motion and to speed the trial of a case so as to reach the proper end, when no action below was had on the merits; but such writ will not lie to an inferior court to correct alleged errors occurring in the exercise of its judicial discretion."

The real bone of contention between the parties to this proceeding is whether or not, in view of our Constitution and statutes, the district court had the power to exercise its judicial discretion in making the order complained of by plaintiff. Our state Constitution (section 11, article 1), to which plaintiff directs attention, provides:

"All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party."

Provisions of like import are to be found in the Constitution of the several states. Counsel cites us to no case, and, so far as we have any knowledge, none can be found, holding that the provision referred to abrogates any rule of procedure promulgated by the courts for the proper administration of the

law and justice between the parties before them when in accord with the long-established practice of courts, either of law or equity. To the contrary, it has always been held, regardless of express statutory authority, that courts of general jurisdiction have the inherent power to make and enforce all necessary rules and orders calculated to enforce the orderly conduct of their business and secure justice between parties litigant. The exercise of such powers does not mitigate against nor infringe upon the constitutional right of any person to an open court for the redress of grievances, nor does it unnecessarily delay or operate as a denial of any remedy to which a litigant is entitled by due course of law. 12 C. J. 1011; *McAuslan* v. *McAuslan,* 34 R. I. 462, 83 Atl. 837; *Knee* v. *Railway Co.,* 87 Md. 623, 40 Atl. 890, 42 L. R. A. 363; *Shear* v. *Box,* 92 Ala. 596, 8 South. 792, 11 L. R. A. 620; *Lowe* v. *Kansas,* 163 U. S. 81, 16 Sup. Ct. 1031, 41 L. Ed. '78; *Brown* v. *Wightman,* 47 Utah, 31, 151 Pac. 366, L. R. A. 1916A, 1140. Concerning these constitutional provisions this court, speaking through Mr. Justice FRICK in the case last above cited, has said:

"The courts have, however, always considered and treated those provisions, not as creating new rights, or as giving new remedies where none otherwise are given, but as placing a limitation upon the Legislature to prevent that branch of the state government from closing the doors of the courts against any person who has a legal right which is enforceable in accordance with some known remedy. Where no right of action is given, however, or no remedy exists under either the common law or some statute, those constitutional provisions create none."

It is argued by the defendants, and we think it is generally conceded, that by the overwhelming weight of authority courts of general jurisdiction had the discretionary right at common law to stay the proceedings in a second action for the same cause between the same parties until the costs in the first suit in which plaintiff failed had been paid. The practice had its origin in the English courts in actions of ejectment where judgment in one suit was not a bar to subsequent suits to try the same title. In theory the power was conferred on equitable principles and the duty of the courts to so control

their own proceedings so as to preclude them from becoming the means of oppression and affording avenues for repeated and vexatious litigation at the hands of unscrupulous parties. In 15 C. J. section 743, page 301, where many authorities are collated in the footnotes, it is said:

"The practice of enforcing payment of costs awarded by a final judgment by staying a second action based on the same cause of action originated in ejectment suits, but the scope of the rule was subsequently enlarged, and now embraces all classes of actions, but may not embrace special proceedings. The power to grant a stay is equitable in its nature, and does not depend exclusively on the question whether the collection of costs can be enforced by execution; and in exercising the power the courts have in view the twofold object of compelling payment of costs, and preventing vexatious litigation. The power to grant a stay to enforce payment of costs of a former suit for the same cause of action exists at common law and is a rule of practice' which obtains in practically all jurisdictions unless forbidden expressly or impliedly by some statute."

We may remark that the rule obtains in many jurisdictions by reason of express statutory enactment, as, for example, in New York under Code of Civil Procedure, section 779; in others under the common-law practice alone, as in Washington. *Schwede* v. *Hemrich*, 29 Wash. 124, 69 Pac. 643.

However, it must be kept in mind that the objects of the rule are primarily to preclude the abuse of the court's processes by preventing needless and vexatious litigation, and particularly as a means of intimidation or extortion. In the present case, as we have pointed out, the second action was brought in forma pauperis. Simultaneously with the filing of his complaint plaintiff filed an oath that he was impecunious and unable to bear the expense of the action, in conformity with the provisions of Comp. Laws Utah 1917, section 2577, which reads:

"Any person may institute, prosecute, defend, and appeal any case in any court in this state by taking and subscribing, before any officer authorized to administer an oath, the following:

"I, A. B., do solemnly swear (or affirm) that owing to my poverty I am unable to bear the expenses of the action or legal proceedings which I am about to commence or the appeal which I am about to take, and that I verily believe I am justly entitled to the relief sought by such action, legal proceedings, or appeal."

It is argued and contended by the defendants that the statute just quoted has nothing to do with the power of the court to exercise its discretion by granting a stay of proceedings until the costs of the former action shall have been paid by the plaintiff; that the mere pecuniary inability of the plaintiff to pay costs in the second action did not absolve him from paying the costs in the first action, nor deprive the district court from exercising its discretionary power to stay proceedings until the costs awarded against the plaintiff in the first action shall have been paid. In the abstract we think the defendants are right in their contention. However, the rule contended for is not applicable in all cases. It must be kept in mind the very purpose of the rule contended for is to preclude the abuse of the court's processes and insure complete justice as between the parties before it. We do not understand the rule to be a universal one in its application, although it has been generally adhered to and applied both under the common law and the statutes upon proper application where a new suit has been commenced on the same cause of action between the same parties without payment of the costs of a former suit. If, however, under the facts of a given case one party or the other is by the enforcement of the rule unjustly precluded from prosecuting his just claims, or making a proper defense to the second suit brought, it at once destroys the equality of the parties before the law, and undermines the whole superstructure upon which our American jurisprudence is founded. Therefore no hard and fast rule can be laid down that will be controlling in every case. It follows, however, from what has been said that mere nonpayment of costs will not in all cases justify a stay of proceedings. In the absence of some showing made that under the facts and circumstances of a particular case the court's processes are being abused or the suit is sought to be oppressively or vexatiously prosecuted, we think the rule should not be applied. Undoubtedly the courts have the inherent power to exercise their discretion when an action is shown to be oppressive or vexatious in character or when their attention is called to a proper case for so doing. We do think, however,

that under the facts and circumstances disclosed by the record here such a case was not presented nor was there any proper showing made before the district court to invoke its discretionary power to order a stay of proceedings.

In the first suit the plaintiff was nonsuited for some reason not apparent to us, as the record in that regard is not brought before us, but presumably the nonsuit was ordered for just and legal reasons. Under the provisions of our Code of Civil Procedure plaintiff after nonsuit had a perfect right to commence his action anew within the time limited by Comp. Laws Utah 1917, section 6484. At the commencement of the second action it was stated by affidavit in due form that the plaintiff was impecunious, and therefore unable to pay costs. It was also stated that he was justly entitled to the relief sought against the defendants. There was absolutely no showing made whatever, except the bare fact of nonpayment of costs of the former action, that his second action was oppressive or vexatious in character, or that he did not have a meritorious cause of action against the defendants. The only contention therefore that can be made in justification of the court's order granting a stay of proceedings was the affidavit on the part of the defendants stating that the plaintiff had been nonsuited in a former action, and that the costs awarded against him in defendants' favor had not been paid. The effect of the court's order was, by reason of plaintiff's financial inability to pay costs, to leave him stripped of the only way he could proceed to prosecute his second action against the defendants, no matter how meritorious were his demands. The ruling of the district court under the admitted facts and circumstances, as we view it, was inconsistent with the spirit of both the common law and our Code of Civil Procedure permitting a poor person, upon a proper showing, to sue in forma pauperis. Let it be said that under the circumstances it is generally held that the second suit is presumptively vexatious; yet the fact remains that, no matter how just and meritorious plaintiff's cause of action against the defendants may be, plaintiff, a poor person, is not to be permitted, under the ruling of the district court complained of, to proceed without

paying the costs of the first suit.  If the plaintiff's oath or affidavit of impecuniosity and that he is justly entitled to the relief sought is not to be regarded as removing the presumption of vexatiousness, then the only logical conclusion to be arrived at under the showing already made, and the only showing that can be made by plaintiff, is that he is not to be permitted to prosecute his claims against the defendants in our courts.  We can but conclude that under the showing made by plaintiff such is neither the spirit nor intent of the law.

It is our opinion that under the facts and circumstances of the case presented the plaintiff is being denied a substantial right and should be permitted, under the showing made by him, to proceed in the district court with his suit against the defendants before payment of the costs of his former action.

It is therefore ordered that the demurrer herein be overruled, and, further, that a peremptory writ of mandate issue. Plaintiff to recover costs against defendants.


FRICK, J.


While I fully concur in the conclusions reached by the Chief Justice, yet, in view of the provisions of our statute to which I shall more specifically refer hereinafter, I feel constrained to place my concurrence upon somewhat broader grounds than those upon which the Chief Justice bases his conclusions. I do so: (1) Because in my judgment our statute not only warrants but requires it; (2) because it appears from the decision of the district court, which is in the record, and from the order entered in this case, that the order is based entirely upon a presumption which is enforced in all cases where a second action is commenced in all of the departments of the district court of Salt Lake county, which presumption, in view of our statute, is, in my judgment, without any foundation; and (3) because counsel for both sides have presented the case upon that theory.

The question of whether a second action may or may not be commenced unconditionally by any one without being sub-

jected to the assumed presumption is therefore squarely before us, and, in order to settle the question, should be unconditionally decided.

Referring now to the first contention, namely,. that mandamus is not the appropriate remedy: That contention, in my judgment, is clearly without merit. The record conclusively shows that the district court, pursuant to the defendants' motion, merely entered an order suspending further procedings in the action until the costs taxed in the first action "shall have been paid." The action was therefore not dismissed nor was a judgment of dismissal entered. All that was done was to suspend further proceedings therein. Such an order, under our practice, is not a final judgment from which an appeal can be taken. The only remedy available to the plaintiff, therefore, was to apply for a writ of mandate to require the district court to proceed to try the second action. While counsel for defendants have cited a number of cases wherein it is held that appeal, and not mandamus, is the proper remedy, yet in all of the cases cited it appears that the courts had entered judgments finally dismissing the actions. If in this case a final judgment dismissing the action had been entered, there would be much force to counsel's contention that appeal is the proper remedy. In this case all that was done, however, was to enter an order suspending further proceedings until such time as plaintiff shall have paid the costs taxed against him in the first action. Such an order is not a final judgment, and hence plaintiff was powerless to proceed further until that order was modified or set aside. A writ of mandate to require the district court to vacate the order suspending proceedings and to proceed with the trial of the case was therefore a proper, and in my judgment the only, remedy plaintiff could invoke.

Recurring now to the second proposition, namely, that the plaintiff must fail in this proceeding for the reason that the order made by the district court was one within its discretion, and hence cannot be controlled by mandamus: That contention is, in my judgment, likewise untenable. Many cases are cited by defendants in support of the foregoing proposition.

The basis of all of those decisions is that in case the plaintiff
is nonsuited, or if he voluntarily dismisses his action, and
thereafter commences another action against the same de-
fendant for the same cause of action, the second action is
presumptively vexatious; that is, a presumption prevails
against the plaintiff that his second action is vexatious, and
hence it is within the discretion of the trial court to require
him to pay the costs taxed against him in the first action before
permitting him to proceed with the trial of the second one. In
my judgment the weight of authority is to the effect that,
where the first action fails otherwise than upon the merits,
and a second action is commenced upon the same cause of
action and against the same defendant, the second action is
presumptively vexatious. In view of that presumption it is
held in those cases that the trial court may in its discretion
refuse to proceed with the trial of the second action until the
costs taxed against the plaintiff in the first action are paid.
All of those decisions, however, are based upon statutes which
in some respects differ from ours and rest upon the assump-
tion that the second action may not be commenced as a matter
of right the same as the first one, but that a second action may
be prosecuted only as a matter of grace and upon certain con-
ditions that may be imposed by the court in which it is com-
menced. As I view the matter, the whole question depends
upon the statute which is in force in the particular jurisdic-
tion where the actions are commenced. While it is true that
many of the states have statutes authorizing the bringing of
a second action in case the first one fails otherwise than upon
the merits, or in case the judgment in favor of the plaintiff is
reversed by the appellate court, yet not all of the statutes in
force in the several states are the same in import or effect.
Our statute permitting a second action is found in Comp.
Laws Utah 1917, section 6484, and reads as follows:

"If any action be commenced within due time, and a judgment
thereon for the plaintiff be reversed, or if the plaintiff fail in such
action or upon a cause of action otherwise than upon the merits,
and the time limited for the same shall have expired, the plaintiff,
or, if he die, and the cause of action survive, his representatives
may commence a new action within one year after the reversal or
failure."

That section in a more restricted form first appeared in Comp. Laws Utah 1876, page 369. From there it was carried forward into Comp. Laws Utah 1888 as section 3160. We next find it in Rev. Stats. Utah 1898 as section 2893 in the form it is set forth above. From thence it was carried into Comp. Laws Utah 1907, and from thence into the compilation of 1917, where it is found as section 6484, supra. Until 1898 the statute was limited to cases where a judgment in favor of the plaintiff had been reversed by the appellate court. In the Revised Statutes of 1898 it was, however, adopted in its present form, and has since then always been in force in this state. The section as now in force is, however, also supplemented by other sections which must be considered. Comp. Laws Utah 1917, section 6848, provides under what conditions actions may be dismissed and when a nonsuit may be granted. Section 6859, among other things, provides that a dismissal of the complaint "either before or after a trial does not prevent a new action for the same cause of action" unless it is expressly declared by the judgment roll that it was rendered upon the merits. If sections 6848, 6859, and 6484 are considered and construed together, as they must be, there is little, if any, room for doubt that under our statute, in case plaintiff's action fails otherwise than upon the merits, he has precisely the same right to commence a second action that he had to commence the first one; in other words, that there is no presumption against the plaintiff that the second action is vexatious any more than such a presumption existed that the first one was vexatious.

While it is true that an action may be vexatious, yet, in view of section 6859, which in express terms provides that a second action shall not be prevented, and of section 6484, which unconditionally authorizes a second action, I am utterly unable to perceive any basis for the presumption that the second action is any more vexatious than the first one. It might just as well be assumed that, in view that one may commence an action for vexatious purposes, therefore a presumption prevails that all actions are vexatious.

When a right to bring a second action is given uncondition-

ally, as is the case here, in view of the provisions of the sections to which I have referred, there is—there can be—no basis for the presumption that the right is exercised vexatiously.   If an action is in fact vexatious, that fact may be made to appear just as well when it is commenced the first time as it may be when it is commenced the second time.   Under our statute the right to bring a second action is precisely the same as is the right to bring the first one, and it seems to me that, if the defendant has good reasons to believe and does believe that the action is vexatious, he has the same right to oppose the first action upon that ground as he has to oppose the second one, and no better right. Courts are merely the instrumentalities of the sovereign state through which justice is administered in accordance with law, and no judge should permit his court to be used by any one as an instrumentality of oppression or vexation, upon the one hand, nor should he, by means of assumed presumptions, close the doors of the court against any one who under the law has a right to come into court.   If, therefore, the suit is vexatious, it should be arrested at the very threshold of the proceeding; and, if it is not shown to be so, the right to proceed to trial should not be denied upon presumptions which are not based upon actual facts.

Moreover, if the action is vexatious, I cannot understand how the mere payment of cost purges it of that vice, nor do I see how the filing of an affidavit that the plaintiff is unable to pay the costs dissipates the presumption.   If the action is vexatious, how can either the payment of costs or the inability to do so cure that vice?   To so hold necessarily results in this, that a man with means may freely exercise his propensity to vex by the bringing of a second action in case he is willing to pay costs.   Merely to pay costs, under the ruling of the district court, entirely dissipates the presumption of vexatiousness, and thereafter there is nothing which prevents the man with means from maintaining the action, although the desire to vex may be precisely the same as though he had not paid the costs.   The court may thus be made an instrumentality to vex and harass upon the sole condition that the costs of the

first action, which failed, are paid. It seems to me that merely
to state the proposition should be sufficient to refute it.

In order to aid me in arriving at what I deem a just con-
clusion, I have carefully examined all of the statutes of the
different states of the Union. In doing so I have discovered
there is but one other state, namely, Montana, whose statute
is precisely like ours respecting the bringing of a second ac-
tion.. There are sixteen states which have statutes very sim-
ilar to our section 6484, supra, namely: Arkansas (Kirby &
Castle, Dig. Stats. Ark. section 6011); Colorado (2 Mills'
Ann. Stats. Colo. page 2018, section 4643); Connecticut (2
Gen. Stats. Conn. section 6171); Illinois (Hurd's Rev. Stats.
Ill. 1915, page 1674, section 25); Montana (2 Rev. Codes
Mont. section 6464); North Carolina (Revisal of 1905 of N. C.
section 370); Ohio (2 Bates' Ohio Ann. Stats. [3d Ed.] sec-
tion 4991); Oklahoma (C. L. Okl. 1909, page 1222, sec-
tion 5555); Rhode Island (Gen. Laws R. I. page 1002,
section 9); Mississippi (Hemingway's Ann. Miss. Code,
section 2488); Missouri (1 Rev. St. Mo. 1899, page 1030, sec-
tion 4285); Kansas (Gen. Stat. Kan. 1909, section 5615);
Maine (Rev. Stat. Me 1916, page 1217, section 94; Id. page
1380, section 11); Tennessee (Thompson's Shannon's Code
of Tenn. section 4446); Vermont (Public Stats. Vt. sec-
tion 1566). While the phraseology of the statutes differ
somewhat, yet in substance and effect they are the same as
our section 6484, supra. There is, however, no such statute as
our section 6859, to which I have called attention, except in
the state of Montana.

There are sixteen other states wherein the statutes upon the
subject are more restricted than ours. In fact, the statutes
of those states are practically the same as ours was before it
was enlarged in 1898, as before stated. These states are:
Alabama (Code of Ala. 1907, section 4845); California
(Kerr's Cyc. Code of Cal. C. C. P. section 355); Idaho (Comp.
Stats. Idaho, section 6626); Indiana (1 Burns' Ann. Stats. of
Ind. 1901, section 300); Nevada (2 Rev. Laws Nev. 1912, sec-
tion 4980); New Hampshire (Stat. of N. H. 1891, page 599,
section 9); New Jersey (2 Gen. Stat. N. J. page 1978, sec-

tion 26; North Dakota (Comp. Laws N. D. 1913, section 7388) ; Oregon (Gen. Laws Or. 1843-1872, page 109, section 21) ; Massachusetts (Public Stats. Mass, page 1114, section 12) ; Michigan (3 Comp. Laws Mich. section 12329) ; Minnesota (Gen. Stat. Minn. section 7713) ; South Dakota (Rev. Codes S. D. page 879, section 73) ; Virginia (2 Va. Code Ann.. section 2934) ; West Virginia (Code W. Va. 1899, page 779, section 19) ; Wisconsin (Sanborn & Berryman's Ann. St. Wis. page 2180, section 4235) ; New York (1 Bliss, Ann. Code, section 405).

The following states have statutes which differ somewhat from those of all the other states I have hereinbefore named, namely: Georgia (Civ. Code of the State of Georgia 1910, section 4381) ; Iowa (Code of Iowa Ann. 1897, section 3455) ; Kentucky (Ky. Stats. 1894, section 2545) ; Maryland (2 Ann. Code Md. page 1667, section 70) ; New Mexico (N. M. Stats. Ann. 1915, section 3355) ; Delaware (Rev. Code Del. 1915, section 4681) ; Florida (Gen. Stats. of the State of Florida 1906, page 699, section 1715).

In the limited time at my command I have been unable to discover any statutes upon the subject in the remaining nine states.

I have referred to these statutes specifically for the reason that counsel in citing cases from the courts of the several states have cited them indiscriminately and seemingly without giving any attention to the provisions of the statutes upon the subject. Indeed, that also seems to be true of many of the decisions in which other cases are cited as authority. Moreover, it seems to be assumed as a matter of course in many of the decisions that the subject, at least to some extent, is regulated by the common law. Such is, however, not the case. Costs, especially in law cases, are purely statutory, and, unless the statute authorizes them, none can be recovered. *McCready* v. *Railroad,* 30 Utah, 1, 83 Pac. 331, 8 Ann. Cas. 732; *Davidson* v. *Munsey,* 29 Utah, 181, 80 Pac. 743.

It has also been held by this court (*Guthiel* v. *Gilmer,* 27 Utah, 496, 76 Pac. 628) that a plaintiff may commence a second action as a matter of right, if the first one fails otherwise

than upon the merits. That is the only case in which both
section 6484 and section 6859 are referred to and considered
together. The logic and effect of that decision is that a sec-
ond action may be prosecuted precisely the same as the first
one, and without the imposition of any conditions. As a mat-
ter of course, if it be made to appear that the first action is
vexatious, it should be promptly dismissed, but the right to
proceed should not be denied upon the mere presumption
which is based upon nothing more substantial than that the
first failed. Of what practical use is the right to commence
a second action if it may not be prosecuted to judgment the
same, as the first one? The right to dismiss an action without
prejudice and to commence another existed at common law.
In view of that fact, why enact the present statute if nothing
was intended to be accomplished by it? But it is insisted that
section 6484 merely extends the time within which a second
action may be commenced. That may be conceded, but the
fact still remains that the second action may be uncondition-
ally commenced. Again, it cannot be said that section 6859
merely extends the time for commencing a second action.
That section, in express terms, provides that a second action
shall not be prevented. That section was first adopted in
1898, when the present form of section 6484 was adopted.
Why adopt section 6859 if nothing more was intended than to
extend the time for bringing a second action? No other state,
save Montana, has a statute like section 6859. Again, the
statute in its present form had been in force fully twenty
years when the decision which is assailed in this proceeding
was rendered. It is common knowledge that during all of
that time the right to commence a second action in case the
first one failed otherwise than upon the merits was freely per-
mitted by our courts and as freely exercised by the litigants.
The right to commence a second action unconditionally had
therefore been the settled practice of the district courts of
this state for practically twenty years. While that, standing
alone, may not be a conclusive reason why the practice should
be continued as a matter of right, yet it presents a more or
less persuasive reason why it should not be disturbed by the

courts at this late date, and especially not when we keep in mind the maxim that ''the practice of the court is the law of the court.'' To follow the course herein outlined, and which is the one indicated by our statute, no injury can result to any one. If the action is in fact vexatious, the defendant may freely allege and prove the fact, and that should end the matter. Upon the other hand, if it be assumed that the second action is vexatious merely because the first action failed otherwise than upon the merits, grave injustice may result. The first action may have failed, as the decisions of this court show, merely because the trial court erred in granting a nonsuit. The presumption is thus based upon a manifest error, and if the plaintiff cannot comply with the order of the court, he is deprived of the right of trying his case on the merits. But, even though it should be held that our statute does not give the right to prosecute the second action unconditionally, and that the weight of authority is to the effect that such a right does not exist, yet, in my judgment, the practice adopted by the district court should not be followed. The question here is not one involving property rights which have been based upon the decisions of the courts. It is merely a question of procedure. If, therefore, a course of procedure has been adopted which it is found does not promote justice and equity, it should be set aside, and a form of procedure substituted therefor which is promotive of justice and equality. A mere change of procedure, if otherwise just, cannot injure any one.

Without pursuing the subject further, and without reviewing the many authorities upon the subject, and without adding further reasons, which might easily be done, I am of the opinion that a peremptory writ should issue for the reason that the district courts of this state are as powerless to impose conditions to the right to prosecute a second action to judgment as they are powerless to impose conditions to prosecute the first one, provided the firstone falls otherwise than upon the merits. In case the defendant makes a showing that the action is in fact vexatious, that question should be tried as other questions of fact are tried; and, if it be found that the

action is vexatious, the judge should promptly dismiss it and refuse to permit his court to be used as an instrumentality to vex and harass the defendant. That course should, however, be followed whether it is the first or second or any other action.

By what I have said I do not wish to be understood that under no circumstances can a presumption arise that an action is vexatious. Neither do I contend that in case a plaintiff brings a second action after having dismissed the first one, or after having failed therein otherwise than upon the merits, the defendant may not make it appear that by reason of his poverty, or for any other valid reason, he is unable to present his defense to the second action and ask that the court make such orders respecting the payment of costs in the first action and respecting the trial of the second case as may be fair and just to both parties. All I insist upon is that the court has no right to impose conditions upon the plaintiff to proceed with his second action on the mere presumption that it is vexatious, and hence unfair to the defendant.

THURMAN, J.

The statutes of Utah recognize the right of a plaintiff to commence a new action for the same cause when the first action is dismissed upon grounds other than the merits. The right, as far as the statutes are concerned, is unconditional. It implies the right to prosecute the case to a final judgment. Granting the contention of defendant that, notwithstanding the statutes, the courts have the power to maintain orderly procedure, protect the rights of litigants, and prevent the abuse of its process on the part of those whose purpose is to vex and annoy, the question nevertheless arises: Should the court in any case when a new action is commenced assume to impose insurmountable conditions upon the right to prosecute the case, without some showing of bad faith, hardship, or oppression? In answer to this question we are met with the proposition that the law presumes the second suit is vexatious, and that the burden is upon plaintiff to show that it is not.

The logic of this contention, to say the least, is far from convincing.

It is conceded in this case that the first action was dismissed on grounds other than the merits.   Therefore the merits of the action were not involved.   They stand unchallenged, unaffected, and the good faith of the plaintiff in bringing the action is in no manner impeached.   To insist otherwise would be to contend that the merits of the action were involved in the dismissal, and that the judgment of dismissal impeaches their integrity.   This contention, if made, would be contradictory, if not paradoxical.   We cannot in one breath assume that the action was dismissed on grounds other than the merits, and in the next breath contend that the merits were affected by the dismissal.   Looking at the question from every point of view, we are inevitably led to the conclusion that, when the second action is commenced, the plaintiff, as far as his real grounds of action are concerned, is exactly in the same condition as he was at first.   The merits of his action are just the same.   He has neither gained nor lost by the dismissal, except that defendant has obtained a judgment against him for costs.   A judgment for what is due is ordinarily all that any litigant ever obtains in a court of justice, no matter how righteous his cause may be.

If the plaintiff is in the same position when his second action is commenced as he was at first, if the integrity of his cause and the merits of his action were unimpeached by the dismissal, whence comes the presumption that the second suit is vexatious?   I am forced to the conclusion that, whatever may have been the reasons at common law or under the statutes of other states for the presumption relied on, it was the manifest intention of our Legislature, by the statutes referred to, to confer upon plaintiff the right to prosecute a second action under exactly the same conditions and limitations that he could prosecute the first, that he may proceed without any presumptions against him as far as the dismissal of the first action is concerned, and that the question as to whether a suit is vexatious, whether it be the second or the first, is a question of fact to be established by the party who alleges its existence,

unless it is manifest on the face of the proceeding.

I concur in the conclusions reached by my Associates that the writ should issue as prayed for in the complaint.

WEBER, J.

While I concur in the conclusions reached by the Chief Justice, I base my concurrence largely upon the reasons given by Mr. Justice FRICK. In my opinion, courts in this state may not legally adopt and enforce a rule to the effect that the plaintiff in a second suit for the same cause of action should not be allowed to proceed until payment by him of costs of the former action, when plaintiff failed in the first suit otherwise than on the merits. The enforcement of such a rule would be a nullification of the statute. Nonpayment of a judgment for costs in the first action does not, under our statute, raise a presumption that thes econd suit is vexatious. It certainly cannot be deemed vexatious for one to do that which the statute gives him the right to do. The right given by the statute is unconditional, and when a plaintiff fails in a suit otherwise than on the merits, he has the absolute legal right to commence the suit a second time and to proceed as if he had never been in court, whether he pays the costs of the first suit or not. He is not required to purge the second suit of an assumed vice of vexation by paying costs that may have been adjudged against him in the first action.

GIDEON, J.

I concur in the order making the alternative writ permanent. I agree with the conclusion that under the statutes of this state a litigant has the right to institute a second action upon the same facts in case the former action has been determined otherwise than upon the merits. Such second action is' not subject to be delayed or defeated by any presumption that it is vexatious.