2013 UT App 115

# THE UTAH COURT OF APPEALS

LD III, LLC,
*Plaintiff and Appellant,*

*v.*

BBRD, LC AND *BEVERLY JEAN BLACK DAVIS*,
*Defendants and Appellee.*

Opinion
No. 20120073-CA
Filed May 2, 2013

Fourth District, Provo Department
The Honorable Fred D. Howard
No. 080400318

Denver C. Snuffer Jr., Steven R. Paul, and
Daniel B. Garriott, Attorneys for Appellant
Michael N. Zundel and James A. Boevers,
Attorneys for Appellee

JUDGE WILLIAM A. THORNE JR. authored this Opinion, in which
JUDGES JAMES Z. DAVIS and J. FREDERIC VOROS JR. concurred.

THORNE, Judge:

¶1      LD III, LLC appeals from the district court's final judgment awarding Richard W. Davis $1,051,607 in damages, attorney fees, and costs as a result of LD III's contempt of court.[1] We reverse the district court's judgment and remand for further proceedings.

---

1. Richard W. Davis died during the pendency of this appeal, and this court granted a motion to substitute the personal representative of his estate, Beverly Jean Black Davis, as the appellee in this matter.

BACKGROUND

¶2      On October 14, 2008, Davis filed a motion for an order to show cause why LD III, its owner, and its managers should not be held in contempt of court.[2] The basis for this motion was LD III's failure to comply with the district court's September 23, 2008 ruling (the September 23 Ruling) enforcing a settlement agreement between the parties and ordering that LD III transfer certain real property to Davis by September 30, 2008.[3]

---

2. Background information on the parties' underlying dispute can be found in *LD III, LLC v. BBRD, LC*, 2009 UT App 301, ¶¶ 2–12, 221 P.3d 867.

3. There is no transcript of the district court's oral September 23 Ruling, but the resulting minute order stated that "[t]he court enforces the Settlement Agreement" and that "[t]he Order should be changed to reflect that . . . the deadline for completing LD III's closing obligations should be changed to September 30, 2008." On October 9, the district court entered a revised written order prepared by Davis (the October 9 Order). The October 9 Order stated,

> LD III shall close the real estate transaction with Davis by September 30, 2008 in accordance with the closing documents . . . , with the exception that the transferee shall be Davis, and by such date plaintiff shall sign and deliver the closing documents that call for plaintiff's signature, and deliver the other closing documents, all as shown by such documents. If LD III does not close the real estate transaction by September 30, 2008, the Court shall quiet title to the subject real property and water rights in Davis.

As of the entry of the October 9 Order, LD III still had not closed the transaction.

¶3     Davis's motion was supported with an affidavit of counsel asserting that the September 23 Ruling had ordered LD III to close the sale of the property to Davis by September 30 and that LD III had failed to do so. LD III opposed the motion on the grounds that it had filed an appeal of the September 23 Ruling prior to the September 30 deadline and that, in any event, the district court's oral September 23 Ruling was not effective until the entry of the written October 9 Order. The district court granted Davis's motion and entered an order directing LD III and its owners and managers to "show cause why they should not be held in contempt for failure to comply with [the September 23 Ruling] enforcing the parties' settlement agreement, and ordering LD III to close the sale of the subject real property and water rights to [Davis] by September 30, 2008."

¶4     On October 22, 2008, the district court held a hearing on the order to show cause, at which LD III challenged the district court's jurisdiction to consider a contempt finding in light of LD III's pending appeal. Although LD III brought fact witnesses to the hearing, the hearing largely focused on the effect of LD III's appeal, the timeliness of a request by LD III to stay the proceedings, and the nature and amount of the bond LD III would be required to post.

¶5     Near the conclusion of the hearing, the district court indicated that it would accept further briefing on the jurisdictional question. The court stated, "I'm happy to read a case on if I've lost jurisdiction or not. That's just the contempt citation. I think that can be deferred and I think we could set that for a hearing, it's probably a one hour matter . . . ."

¶6     Both parties filed supplemental briefing on the jurisdictional issue, and the district court entered several orders pertaining to the show cause order. On December 4, 2008, the district court entered its Ruling Re: Enforceability of Judgment. That order stated,

> The Court finds that notwithstanding [LD III's] Notice of Appeal dated September 29, 2008, the Court retained jurisdiction to enforce its September 23, 2008 Ruling by holding [LD III] in contempt for failure to close the subject real estate transaction by September 30, 2008 as ordered. As such, the Court further finds that in the event that [Davis] prevail[s] on appeal, on remand to this Court, the Court reserves to [Davis] leave to present further evidence of damages allegedly caused by [LD III's] acts of contempt.

On February 4, 2009, the district court entered its Order Regarding Order to Show Cause, Motion to Stay Pending Appeal and Related Matters (Order Regarding Order to Show Cause), in which the court stated,

> [F]urther proceedings on whether LD III . . . shall be held in contempt of this Court for failure to comply with the Judgment were deferred pending the parties' briefing of the issue of whether enforcement of the Judgment was automatically stayed by LD III's filing of the Appeal. . . . The Court had tentatively set a hearing for December 19, 2008 to further consider the contempt issues (including the issues of [Davis's] contempt damages and costs and expenses).

Finally, the Property Bond for Stay Pending Appeal, signed by all parties and approved by the district court on February 27, 2009, stated, "In the event the Judgment is not reversed on the Appeal, Davis may incur damages resulting from LD III's failure to sell the subject real property and appurtenant water right to Davis by September 30, 2008." However, the district court never did conduct the deferred hearing on whether LD III was in contempt of court, as the court had indicated it would do at the initial October 22, 2008 contempt hearing.

¶7    On October 22, 2009, this court issued its opinion in *LD III, LLC v. BBRD, LC*, 2009 UT App 301, 221 P.3d 867, which affirmed the district court's enforcement of the parties' settlement agreement. In light of this affirmance, LD III attempted to close the real estate transaction with Davis, but he refused. LD III filed motions with the district court asking it to enforce the settlement agreement and order Davis to accept the property. Davis opposed the motions, arguing that the district court had previously ruled that he would have the option of electing either specific performance or contempt damages and that he was no longer "willing nor obligated" to purchase the property for $1.2 million as contemplated in the settlement agreement. The district court denied LD III's motions and set a trial to determine the amount of contempt damages to which Davis was entitled.

¶8    The trial on contempt damages occurred on September 21 and 23, 2011. At the beginning of trial, LD III argued that the district court had never actually entered a finding that LD III was in contempt. The district court rejected LD III's argument, stating, "I'm unpersuaded to strike the trial setting and revisit the question of contempt. . . . Therefore, the Court will stand on its finding of contempt citation. We'll proceed with the trial on damages." At trial, the district court took evidence on Davis's damages but also allowed LD III to raise several defenses to contempt. The evidence supporting these purported defenses included testimony that LD III's owner, Leslie Mower, refused to transfer the property on the advice of her attorney due to a prior tax evasion conviction and that Mower was unable to obtain release from home confinement resulting from that conviction.

¶9    The district court entered its Findings of Fact and Conclusions of Law on January 4, 2012, concluding that it had previously found LD III in contempt in its December 4, 2008 Ruling Re: Enforceability of Judgment, as confirmed by the language in the subsequent February 4, 2009 Order Regarding Order to Show Cause and February 27, 2009 Property Bond for Stay Pending Appeal. The district court also concluded that it was not required

to have entered factual findings in support of its previous contempt finding because the affidavit in support of Davis's motion established LD III's contempt and shifted the burden onto LD III to respond with evidence. Because LD III had never presented evidence disputing Davis's affidavit, the district court concluded that no factual findings were necessary. The district court also made further findings and conclusions on contempt in light of LD III's defenses at trial, rejecting LD III's argument that advice of counsel was grounds for disobeying a court order and determining that either Mower or another agent of LD III could have transferred the property despite Mower's home confinement.

¶10    As to damages, the district court found that LD III's refusal to transfer the property to Davis by September 30, 2008, caused Davis to lose multiple opportunities to sell five lots of the subdivided property to cover the cost of the property purchase. Davis had intended to keep a sixth lot as his profit from the transaction, and the district court determined that the September 30, 2008 value of that sixth lot was $900,000. Accordingly, the district court determined contempt damages to be $900,000. The district court also awarded Davis his attorney fees and costs through July 31, 2011, in the amount of $71,637, with leave to supplement that award with additional fees and costs incurred afterward. Davis established an additional $79,000 in attorney fees, and the district court ultimately entered judgment for Davis in the amount of $1,051,607 on April 3, 2012. LD III appeals.

ISSUE AND STANDARD OF REVIEW

¶11    LD III argues that the district court's contempt citation must be reversed because LD III was not allowed to respond to the merits of the order to show cause and because the district court failed to enter a contempt finding supported by adequate findings of fact and conclusions of law. "We review a trial court's exercise of its contempt power to determine whether it exceeded the scope of its lawful discretion, which is subject to constitutional and

statutory restraints regarding [due process]." *Gardiner v. York*, 2010 UT App 108, ¶ 11, 233 P.3d 500 (alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

¶12    LD III appeals from the district court's judgment awarding Davis damages resulting from LD III's contemptuous violation of the September 23 Ruling. LD III argues that the district court never did enter a contempt order supported by the three required findings that LD III "knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991). We agree, and we reverse the district court's judgment below and remand this matter for further proceedings consistent with the terms of this opinion.

¶13    "A court's authority to sanction contemptuous conduct is both statutory and inherent." *Chen v. Stewart*, 2005 UT 68, ¶ 36, 123 P.3d 416; *see also Burke v. Lewis*, 2005 UT 44, ¶ 23, 122 P.3d 533 ("'[I]t has always been held, regardless of express statutory authority, that courts of general jurisdiction have the inherent power to make and enforce all necessary rules and orders calculated to enforce the orderly conduct of their business and secure justice between parties litigant.'" (quoting *Peterson v. Evans*, 188 P. 152, 153 (Utah 1920))). As to contempt based on express statutory authority, Utah Code section 78B-6-301 identifies certain types of "acts or omissions in respect to a court or its proceedings [that] are contempts of the authority of the court." Utah Code Ann. § 78B-6-301 (LexisNexis 2012). One such category of contempt is "disobedience of any lawful judgment, order or process of the court." *Id.* § 78B-6-301(5). Utah Code section 78B-6-311 elaborates upon a court's authority to award damages as a sanction for contempt, stating,

> If an actual loss or injury to a party in an action or special proceeding is caused by the contempt, the court, in lieu of or in addition to the fine or imprisonment imposed for the contempt, may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses.

*Id.* § 78B-6-311.

¶14 Utah case law has imposed certain requirements on the use of the contempt power.

> The due process provision of the federal constitution requires that in a prosecution for a contempt not committed in the presence of the court, "the person charged be advised of the nature of the action against him [or her], have assistance of counsel, if requested, have the right to confront witnesses, and have the right to offer testimony on his [or her] behalf."

*Von Hake*, 759 P.2d at 1170 (alterations in original) (quoting *Burgers v. Maiben*, 652 P.2d 1320, 1322 (Utah 1982)). Further, "[a]s a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Id.* at 1172. "These three elements must be proven . . . by clear and convincing evidence in a civil contempt proceeding," *id.*,[4] and "[t]he trial court must enter written findings

---

4. "The primary determinant of whether a particular contempt order is to be labeled civil or criminal is the trial court's purpose in entering the order." *Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991). "A contempt order is civil if it has a

(continued...)

of fact and conclusions of law with respect to each of the three substantive elements," *id.*

¶15    We determine that the district court's contempt ruling against LD III violates these principles and cannot stand. We first disagree with the district court's conclusion that LD III was given an appropriate opportunity to defend against Davis's allegation of contempt. In its January 4, 2012 Findings of Fact and Conclusions of Law, the district court found that

> [Leslie] Mower, Barry and Robert Steed, counsel of record for [LD III], Rex Macey (Ms. Mower's case manager for her home confinement) and Bart Bailey (counsel for Ms. Mower), among others, were present at the [October 22, 2008] hearing. However, [LD III] presented no evidence at the hearing. Instead, at the hearing, [LD III's] sole argument for why it should not be held in contempt was that the Court lost jurisdiction to enforce its September 23 Order, when [LD III] filed its notice of appeal on September 29, 2009.

(Citations omitted.) We have reviewed the transcript of that hearing, and we cannot agree with the district court's assessment of the opportunity provided to LD III.

¶16    LD III did challenge the district court's jurisdiction to entertain Davis's contempt motion in light of LD III's pending appeal, and the district court appropriately considered this jurisdictional challenge as a threshold matter to be resolved prior to reaching the merits of the contempt allegation. *See Robinson v.*

---

4. (...continued)
remedial purpose," such as "to compensate an aggrieved party for injuries resulting from the failure to comply with an order." *Id.* Thus, the contempt order against LD III is civil in nature.

*Baggett*, 2011 UT App 250, ¶ 12, 263 P.3d 411 ("[T]he issue of subject matter jurisdiction is a threshold issue, which can be raised at any time and must be addressed before the merits of other claims." (alteration in original) (citation and internal quotation marks omitted)). However, by our review of the transcript, the district court never did resolve the jurisdictional question and reach the merits of the contempt issue. Instead, the district court stated, "I'm happy to read a case on if I've lost jurisdiction or not. That's just the contempt citation. I think that can be deferred and I think we could set that for a hearing, it's probably a one hour matter . . . ." Thus, although it appears from the district court's findings that LD III had brought witnesses to the October 22, 2008 hearing, those witnesses were prevented from testifying when the district court deferred the hearing on the merits of the contempt citation.

¶17 The deferred hearing on the elements of the contempt charge against LD III never did occur. Instead, the district court issued its December 4, 2008 Ruling Re: Enforceability of Judgment, in which the court rejected LD III's jurisdictional argument and reserved the issue of "damages allegedly caused by [LD III's] acts of contempt" pending the outcome of LD III's appeal.[5] The district court's failure to conduct the deferred hearing, however, deprived

---

5. After the September 2011 trial, the district court ruled that its December 4, 2008 reference to LD III's "acts of contempt," as confirmed by language contained in its February 4 and 27, 2009 orders, constituted an order finding LD III in contempt. This is problematic, particularly in light of the February 4 Order Regarding Order to Show Cause's express acknowledgment that "further proceedings on whether LD III . . . shall be held in contempt of this Court for failure to comply with the Judgment were deferred." However, for purposes of this appeal, we accept the district court's characterization of its prior orders and review the resulting contempt ruling under the standards established by Utah case law.

LD III of its constitutionally guaranteed opportunity to confront Davis's witnesses or present its own evidence and testimony on the three elements of contempt. *See Von Hake v. Thomas*, 759 P.2d 1162, 1170 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991). And while the district court subsequently allowed LD III to litigate various affirmative defenses to contempt,[6] it did not clearly allow LD III to challenge whether it "knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Id.* at 1172.

¶18    LD III also complains that the district court failed to enter a contempt citation containing "written findings of fact and conclusions of law with respect to each of the three substantive elements." *See id.* In its January 4, 2012 Findings of Fact and Conclusions of Law, the district court explained its failure to enter findings by quoting from *Coleman v. Coleman*, 664 P.2d 1155 (Utah 1983) (per curiam). In *Coleman*, the supreme court observed, "While it is true that an order to show cause will not issue except upon an affidavit that a party has violated or disobeyed the court's orders, once issued, the burden is on the defendant to present evidence with respect to the three elements" of knowledge, ability, and intentional failure to comply. *Id.* at 1156–57. The supreme court then went on to hold that because the contempt defendant had failed to present rebuttal evidence showing inability to comply with a court order, no explicit factual finding of ability to comply was required. *See id.* at 1157.

¶19    The district court reasoned that, under *Coleman*, because LD III failed to present evidence contradicting the allegations made in the order to show cause, the court was excused from making factual findings on the elements of contempt. However, as we have

---

6. At trial, the district court heard evidence regarding the terms of Mower's home confinement and the advice given to her by her tax attorney, but it rejected LD III's attempts to revisit the previous contempt ruling.

determined above, the district court's failure to conduct a hearing on the elements of contempt—issues which the district court had expressly deferred at the October 22, 2008 hearing—deprived LD III of an adequate opportunity to present evidence on those issues. Further, it seems reasonable to infer from the presence of LD III's witnesses at the October 22, 2008 hearing that LD III had intended to present testimony on the merits of the contempt citation. Under these circumstances, we cannot accept the district court's logic that the matter was essentially uncontested and that *Coleman* excused it from entering the required factual findings.

¶20    For these reasons, we reverse the district court's contempt ruling against LD III and remand this matter for additional proceedings. If the district court opts to pursue Davis's contempt allegations on remand, it is directed to hold a hearing at which LD III can present evidence of its knowledge and understanding of the district court's September 23 Order, its ability to comply, and whether it intentionally failed to comply. The district court is additionally directed to support any contempt ruling with factual findings on each of the three elements of contempt.[7]

CONCLUSION

¶21    The district court's contempt ruling against LD III deprived LD III of its due process rights to confront witnesses and present evidence and testimony, and the district court failed to enter adequate factual findings on LD III's knowledge, ability to comply with the district court's order, and intentional failure to do so. For

---

7. In particular, the district court is to determine the exact terms of the oral September 23 Ruling that LD III is accused of violating. Those terms may or may not have been completely and accurately reflected in the district court's minute order.

these reasons, we reverse the district court's contempt ruling and remand this matter for further proceedings as described herein.[8]

––––––––––

––––––––––

8. We decline to address LD III's arguments pertaining to damages and attorney fees, as those issues may become moot or be revisited by the district court on remand.