2014 UT App 27

**Colter Thomas ALLEN, Petitioner and Appellee,**

v.

**Lacee C. ALLEN, Respondent and Appellant.**

No. 20120925–CA.

Court of Appeals of Utah.

Jan. 30, 2014.

---

772

Douglas L. Neeley, Manti, Attorney for Appellant.

Virginia L. Sudbury and Alison Satterlee, Attorneys for Appellee.

Judge STEPHEN L. ROTH authored this Memorandum Decision, in which Judges J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

Memorandum Decision

ROTH, Judge:

¶1 Colter Thomas Allen (Husband) and Lacee C. Allen (Wife) were married on June 13, 2009, and are the parents of a young daughter (Daughter). Husband filed for divorce in 2010, and after a bench trial, the trial court awarded Husband physical custody of Daughter, refused Wife's request for alimony and attorney fees, and awarded both the marital home and the marital debt to Husband. Wife appeals, arguing that the court did not make adequate findings to support its decisions. We affirm in part, reverse in part, and remand for further proceedings.

¶2 Husband filed a petition for divorce on September 22, 2010. The Sixth District Court held a bench trial on the matter on June 15, 2012. The parties' primary disagreements concerned Daughter's physical custody, division of the marital home, alimony, and attorney fees.

¶3 At trial, Husband put on testimony from a neighbor who claimed to have seen several late-night parties at the couple's home while Husband was away for "deployments or on training sessions" with the Army National Guard. The neighbor also testified that Wife's vehicle was parked at the couple's driveway after 7:00 p.m. "[j]ust a couple nights a week." Husband testified that Wife would "stay out 'til the wee hours of the morning or not come home at all" at least "four nights a week" and that she had an affair four months after the couple's wedding. With respect to the couple's debts and assets, Husband testified that he purchased a home in June 2008 for $96,000, a full year before marrying Wife. After speaking with a realtor and looking at prices for similar homes in his area, Husband believed the home was worth about $80,000, but at the time he owed $90,000 on the mortgage. Other marital debts included $1,100 for Wife's tuition at an applied technology college, $1,000 in supplies for a nail salon Wife planned to open, $3,500 for furniture, and another $300 for shopping and dining costs Wife charged to Husband's credit card. Husband stated that his gross monthly income was $4,854.

¶4 Wife testified that she seldom stayed out late with her friends, "not even once a week." With respect to child custody, Wife and her mother both testified that Wife was the primary caregiver, but Wife acknowledged that Husband "stepped up" as a father after the couple separated. Wife also expressed concern about Husband's emotional stability, citing an unsent message she found on his phone that she believed read "like a suicide letter." A family friend testified that Wife appeared to have a stronger bond with Daughter than Husband. In regard to marital property, Wife stated that the tax-assessed value of the home "was $102,000 ... or $103,000" and opined that the property was probably worth more, apparently be-

cause she generally recalled the mortgage bank's appraisal being higher than that. Wife's pay statements showed that she worked fifteen to twenty hours per week at a bank, earning a gross monthly income of a little less than $1,000. After the couple's separation, her monthly expenses exceeded her income by about $600. As a result, Wife indicated that she was not able to pay back any of the marital debt at that time. Finally, on the issue of attorney fees, Wife testified that she funded her representation with a $2,300 personal loan and still owed an additional $1,800 that she did not have the resources to repay beyond making a $112 monthly payment.

¶ 5 The trial court awarded Husband physical custody of Daughter and denied Wife's requests for alimony and attorney fees. The court awarded the marital home to Husband, along with the associated mortgage, and allocated all of the remaining marital debt to him as well. With respect to child custody, the court found that "[b]oth parents have been actively involved in [Daughter]'s life, and both have provided a substantial portion of all the different kinds of nurturing [Daughter] requires." Ultimately, even though "both parents appear[ed] nearly equally capable of caring for [Daughter]," the court determined that "the stability offered by Husband outweigh[ed] the apparent empathy of Wife." In regard to the marital home and marital debt, the court found that "Husband's income is both higher and more reliable than Wife's" and that the couple had not "appreciably improved their equity in the home during their marriage"—equity that the court found to be negligible. In refusing Wife's request for alimony, the court stated, "No alimony is awarded because Wife did not become dependent on Husband because of their marriage" and made no other factual findings on the issue. Finally, the court denied Wife's request for attorney fees by simply noting, "Each party should pay his or her own attorney's fees." Wife appeals.

¶ 6 Wife challenges the trial court's decision awarding Husband custody of Daughter and denying her alimony and attorney fees. She also challenges the court's division of marital assets. We affirm the child custody award and the division of marital assets. However, we set aside the trial court's denial of alimony and attorney fees and remand for further consideration.

## I. Child Custody

¶ 7 Wife argues that the trial court's findings of fact are insufficient to support its child custody award. Specifically, she asserts that the court's custody award was flawed by its failure "to sufficiently consider the past conduct and demonstrated moral standards of *each* of the parties" as Utah Code section 30-3-10 requires. She also asserts that the court made no findings regarding two other statutory factors: (1) "which party is most likely to act in the best interest of the child, including allowing the child frequent and continuing contact with the non-custodial parent," and (2) "the extent of bonding between the parent and child, including the depth, quality, and nature of the relationship between a parent and child." As a result, Wife argues, the court abused its discretion when it awarded Husband custody of Daughter. We conclude that the court's custody decision was adequately supported.

¶ 8 Child custody determinations are "highly personal and individual, and do not lend themselves to the means of generalization employed in other areas of the law." *Roberts v. Roberts*, 835 P.2d 193, 196 (Utah Ct.App.1992). As a result, "[u]nlike support and alimony determinations, ... there is no checklist of custody factors," *id.*, that "can govern custody determinations in all cases," *Smith v. Smith*, 726 P.2d 423, 426 (Utah 1986). But "the factors relied on by the trial judge in awarding custody must be articulable and articulated in the judge's written findings and conclusions." *Id.* Utah Code sections 30-3-10 and 30-3-10.2 list a number of factors courts consider when making a child custody award, including "which parent is most likely to act in the best interest of the child, including allowing the child frequent and continuing contact with the noncustodial parent," Utah Code Ann. § 30-3-10(1)(a)(ii) (LexisNexis 2013),[1] "the extent of bonding

---

1. Throughout this decision, we cite the current version of the Utah Code because no substantive

between the parent and child, meaning the depth, quality, and nature of the relationship between parent and child," *id.* § 30–3–10(1)(a)(iii), and "any other factors the court finds relevant," *id.* § 30–3–10.2(2)(j). We review a trial court's custody award for an abuse of discretion. *Grindstaff v. Grindstaff*, 2010 UT App 261, ¶ 3, 241 P.3d 365.

¶ 9 We conclude that the trial court appropriately considered and balanced the pertinent statutory factors. While the court noted instances in which Wife's conduct deviated from appropriate bounds, it took a far more nuanced and balanced approach than Wife acknowledges, giving little weight to the circumstances that led to the couple's separation: "Even if the Court could award custody based upon who is responsible for the failed marriage, the Court lacks the wisdom to determine which of the parties is responsible for that loss." Instead, the court focused on individual factors that are directly pertinent to both parties' ability to care for Daughter, beginning with an acknowledgement that "both parents appear nearly equally capable of caring for [Daughter], though in different ways." *See generally Tucker v. Tucker*, 910 P.2d 1209, 1215 (Utah 1996) (noting that child custody decisions "may frequently and of necessity require a choice between good and better" (citation and internal quotation marks omitted)).

¶ 10 In particular, the trial court's factual findings address the two statutory factors Wife claims the court ignored. First, the court considered the moral character of both parties, not just Wife's. As we have discussed, *see supra* ¶¶ 34, the court heard conflicting testimony regarding Husband's emotional stability and Wife's maturity. It specifically found that Husband is "stable" while Wife is "immature," with a tendency to put her needs above those of others, including Daughter. The court may not have discussed Husband's moral character as extensively as it did Wife's, but it clearly credited testimony about Wife's self-indulgent lifestyle and discounted Wife's claims that

Husband was emotionally unstable or had other disqualifying character flaws:

> Though Wife is kind and loving with [Daughter], Wife is still quite immature. The Court believes the accounts of Husband and his neighbor which paint Wife as very interested in "partying." Part of Wife's tendency to "party" may be attributed to her desire to get away from Husband, but the Court believes that she also has difficulty putting the needs of others, even her child, above her own to be "free."

¶ 11 We will not reverse a trial court's credibility determination unless it is "against the clear weight of the evidence" or our review leads to a "definite and firm conviction that a mistake has been made." *Woodward v. LaFranca*, 2013 UT App 147, ¶ 7, 305 P.3d 181 (citation and internal quotation marks omitted). Wife has not challenged the court's credibility determination on appeal, nor is it against the clear weight of the evidence. We therefore conclude that the court's discussion of the parties' relative maturity, stability, and ability to care for Daughter constitutes adequate consideration of both parties' "past conduct and demonstrated moral standards." *See* Utah Code Ann. § 30–3–10(1)(a)(i).

¶ 12 Second, the court adequately considered who would best meet Daughter's needs going forward, including which parent was more likely to allow Daughter contact with the other and the character and quality of Daughter's bond with each parent. The findings of fact address how well each parent had cooperated in the past "in sharing parent time" and noted that each parent "provided a substantial portion of all the different kinds of nurturing [Daughter] requires." After observing that Husband and Wife were "nearly equally capable of caring for [Daughter]," the court ultimately determined that Husband's stability outweighed the more "empathetic" relationship Wife had with Daughter. Further, the court directed Husband and Wife to "work out a mutually agreeable schedule for sharing parent time" because of Husband's "regular absences" as a member of the Army

changes have been made to the relevant statutory provisions that would affect the resolution of the

issues presented on appeal.

National Guard. We therefore cannot agree with Wife that the court failed to adequately consider the character and quality of Daughter's bonds with both parents or which parent would be more likely to allow Daughter contact with the other.

¶ 13 In summary, the court's findings of fact show it made a difficult choice between two good parents, giving adequate consideration to Daughter's best interest and other pertinent statutory factors in awarding custody to Husband. *See Tucker*, 910 P.2d at 1215 ("A trial court need not find one parent inadequate before awarding custody to the other."). Contrary to Wife's contentions, the trial court considered the moral character of each parent, the nature and quality of Daughter's relationship with each parent, and which parent would be more likely to allow Daughter contact with the other, and it exercised discretion and judgment in reaching a difficult decision, one that we will not disturb on appeal. *See Thomas v. Thomas*, 1999 UT App 239, ¶ 3, 987 P.2d 603 (noting that child custody awards are disturbed only where "the trial court's judgment is so flagrantly unjust as to be an abuse of discretion" (citation and internal quotation marks omitted)).

## II. Marital Assets

¶ 14 Wife also challenges the court's division of marital property. Specifically, she argues that the trial court's decision to award Husband the marital home was not "based upon adequate findings" because it did "not place a dollar value on the distributed assets as required under Utah law." She also argues that the court failed to value the couple's 2011 tax refund and divide it as a marital asset. We conclude that the court made adequate findings to support its award of the marital home to Husband. We do not reach the tax refund issue because Wife did not preserve it for appeal.

### A. The Marital Home

¶ 15 The court's findings of fact adequately support its decision to award the marital home to Husband. Trial courts have "considerable discretion" in distributing the marital estate, and we will not disturb a trial court's ruling "as long as [it] exercises this discretion in harmony with the standards set by the appellate courts." *Roberts v. Roberts*, 835 P.2d 193, 198 (Utah Ct.App.1992). "[A] trial court attempting to make an equitable property distribution should engage in a four-step process, making findings of fact that are sufficiently detailed and that include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Boyer v. Boyer*, 2011 UT App 141, ¶ 10, 259 P.3d 1063 (citation and internal quotation marks omitted). First, the court should categorize all debts and assets as either separate or marital property; second, it should determine "whether there are exceptional circumstances that overcome the general presumption" of equal property division; third, it should place a value on each piece of marital property; and fourth, "it should distribute property in a manner consistent with its findings." *Id.* (citation and internal quotation marks omitted).

¶ 16 Here, the court made the following findings regarding the marital home and the couple's other debts:

20. Husband and Wife have a home which Husband bought before they were married. Husband's income is both higher and more reliable than Wife's. Although Husband paid about 20% down when he purchased the home, and has been making regular payments on the mortgage, Husband expresses a belief that there is no equity in the home. The parties have additional debt which is partly attributable to an effort to equip Wife for more productive employment and partly to a tendency of the parties to live beyond their means.

21. The court is not convinced that the parties have appreciabl[y] improved their equity in the home during their marriage, so the court awards Husband the home subject to the mortgage thereon.

¶ 17 The court's findings are not inadequate. There are two ways to read the findings, and both support the court's decision to award the marital home to Husband. First, the court could have determined that the home was separate property and appropriately awarded it to Husband. It found

that Husband purchased the home prior to the couple's marriage, and it credited Husband's testimony that there was no equity in the home over Wife's assertion that the home's value may have exceeded the mortgage balance by some amount. While Wife might have had an interest in any equity that accumulated during the marriage, the court may have determined that the couple had not improved the equity in the home at all while they remained together. Trial courts are required to place a value on marital property, but not separate property, *id.*, so the court accordingly awarded the home to Husband without explicitly finding its value.

¶ 18 Second, the court could have determined that the home was marital property but that the mortgage was under water. As we have discussed, the court clearly credited Husband's testimony that there was little, if any, equity in the home. Implicit in this determination is a finding that the home's value was less than or roughly equal to $90,-000—the amount Husband testified was outstanding on the mortgage. The court also found that Husband's income was "higher and more reliable" than Wife's. The court may therefore have categorized the home as marital property, implicitly valued its equity at less than or equal to $0, determined that Husband was more capable of shouldering the burden of the substantial mortgage, and awarded the marital home and its attendant debt in accordance with those findings. Although the findings could have been more detailed, they are not inconsistent with the "four-step process" appellate courts require for equitable property division, and the court therefore did not abuse its discretion. *See id.*

B. The 2011 Tax Refund

¶ 19 We do not reach the distribution of the couple's 2011 tax refund because the issue was not preserved. "To be preserved for appeal, an 'issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.'" *Pearson v. South Jordan City*, 2012 UT App 88, ¶ 11, 275 P.3d 1035 (quoting *Normandeau v. Hanson Equip., Inc.*, 2009 UT 44, ¶ 23, 215 P.3d 152). "[M]erely men-

tioning ... an issue [at trial] without introducing supporting evidence or relevant legal authority" does not give the trial court that opportunity. *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366 (omission in original) (citation and internal quotation marks omitted). Rather, to sufficiently raise an issue, "even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it." *Weiser v. Union Pac. R.R. Co.*, 2010 UT 4, ¶ 14, 247 P.3d 357 (citations and internal quotation marks omitted); *see also Pearson*, 2012 UT App 88, ¶¶ 11–12, 275 P.3d 1035 (holding that a city's general reference to an old statute as simply "the predecessor statute to the one we're looking at" did not preserve for appeal the argument that the old statute governed the city's termination of an employee (internal quotation marks omitted)).

¶ 20 Here, Wife never asked the trial court to rule on the issue she now raises on appeal—whether the 2011 tax refund is part of the marital estate and should be equitably distributed. In his opening statement, Wife's attorney characterized the issues as the "marital home, ... what should happen with the child[,] ... a request for alimony [and] ... attorney's fees." Likewise, in his closing statement, Wife's attorney discussed alimony, the marital home, child custody, and attorney fees. At the end of the trial, the court summarized the issues as child custody, alimony, attorney fees, the marital home, and marital debt. The court then asked Wife's attorney, "anything else, Counsel?" He responded, "No, your honor."

¶ 21 Wife's trial counsel did mention the tax refund twice at trial, but neither reference indicated to the trial court that Wife claimed a portion of the refund as part of the marital estate. First, when Wife's trial counsel questioned Husband about his 2011 tax refund, the exchange places the refund in the broader context of the marital debt:

Q Okay. And what was your income tax refund, State and Federal, for 2011.

A $2,600.

Q And did you apply that to the marital debt?

A I did not.

[Q] What did you do with it?

A   I paid off some other bills that I had.

Q   Okay. So you paid off your bills using the tax deduction, but didn't pay off any marital debt?

[A]   Correct.

¶ 22 Second, Wife mentioned the tax refund in her testimony but seemed to assert the refund as an offset to any portion of the marital debt that the court might otherwise consider allocating to her.   She stated her belief that she was "[a]bsolutely" entitled to at least half of Husband's 2011 tax refund, but only after answering questions about the debt accumulated on Husband's credit card for Wife's education and other expenses. When the court issued a written decision that did not mention the tax refund, Wife did not object.   In light of the tax refund's conspicuous absence from trial counsel's opening and closing statements, his failure to raise it when the court summarized the issues to be resolved at the end of trial, and his failure to object to the trial court's order, it is difficult to view either reference in testimony as raising the issue "to a level of consciousness such that the trial judge [could] consider it."   *See Weiser,* 2010 UT 4, ¶ 14, 247 P.3d 357 (citation and internal quotation marks omitted). And given the circumstances, the court's failure to consider it was not simply an oversight, but the result of Wife's own enumeration of the issues. *See State v. Winfield,* 2006 UT 4, ¶ 15, 128 P.3d 1171 ("[A] party cannot take advantage of error committed at trial when that party led the trial court into commiting the error." (citations and internal quotation marks omitted)).

## III.   Alimony

¶ 23 Wife argues that the trial court erred in denying her request for alimony because the court failed to make sufficient findings of fact to support its decision.   We agree.

¶ 24 While we will not reverse a trial court's alimony award absent an abuse of discretion, we note that trial courts are required to consider three factors before awarding or denying alimony: "(1) the financial needs and condition of the recipient spouse;   (2) the ability of the recipient spouse to provide a sufficient income for himself or herself;   and (3) the ability of the payor spouse to provide support."   *Jensen v. Jensen,* 2007 UT App 377, ¶ 4, 173 P.3d 223. And "the trial court must make detailed findings" on each factor, *Rehn v. Rehn,* 1999 UT App 41, ¶ 6, 974 P.2d 306, "unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment," *Baker v. Baker,* 866 P.2d 540, 546 (Utah Ct.App.1993) (citations and internal quotation marks omitted).   The failure to make such findings "constitutes an abuse of discretion."   *Rehn,* 1999 UT App 41, ¶ 6, 974 P.2d 306 (citation and internal quotation marks omitted).

¶ 25 Here, the trial court's factual findings regarding alimony are contained in a single sentence:   "No alimony is awarded because Wife did not become dependent on Husband because of their marriage."   Beyond what may be implied by that statement, the court did not discuss Wife's financial needs and condition, assess her ability to generate sufficient income to cover her expenses, or analyze Husband's ability to provide support.

¶ 26 Husband argues that the court "properly heard testimony or reviewed evidence based upon each factor," and therefore "it is clear on its face that the court properly considered each factor and ... determined that to award alimony would have been improper."   While the court's conclusion that "Wife did not become dependent on Husband because of their marriage" might be interpreted to mean that, as a practical matter, her lifestyle had not changed as a result of this relatively short marriage and therefore she had no additional need requiring alimony, *see Sellers v. Sellers,* 2010 UT App 393, ¶ 3, 246 P.3d 173, the court's factual and legal analysis is simply too terse to permit us to reach such a conclusion on appeal, *see Bell v. Bell,* 810 P.2d 489, 492 (Utah Ct.App.1991) ("[W]e must reverse unless the record is clear and uncontroverted such as to allow us to apply the [three alimony] factors as a matter of law on appeal.").   Without more detailed factual findings that "include enough subsidiary facts to disclose the steps by which the ultimate conclusion [on alimony] was reached," *see Hall v. Hall,* 858 P.2d

1018, 1021 (Utah Ct.App.1993), the factual record here does not clearly support the court's decision to deny alimony. Accordingly, we conclude that the trial court's findings of fact on the issue are insufficient.

### IV. Attorney Fees

¶ 27 For similar reasons, we conclude that the trial court's findings of fact were not adequate to support its denial of Wife's request for attorney fees. A trial court has discretion to award costs and attorney fees to either party in a divorce proceeding. Utah Code Ann. § 30–3–3(1) (LexisNexis 2013). But "the award [or denial of such fees] must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Wilde v. Wilde*, 969 P.2d 438, 444 (Utah Ct.App.1998) (alteration in original) (citation and internal quotation marks omitted). "Failure to consider these factors is grounds for reversal on the fee issue." *Id.* In *Wilde*, we reversed a trial court's denial of attorney fees where the court "ordered both parties to pay their own attorney fees and costs, but made no findings regarding defendant's need for the award, the ability of the plaintiff to pay fees or costs, or the reasonableness of [the] requested fees." *Id.* Here, the court similarly concluded, "Each party should pay his or her own attorney's fees," but it did not make any findings regarding Wife's financial need, Husband's ability to pay, or the reasonableness of the $2,200 fee Wife requested. The court's findings of fact are therefore not adequate to support its denial of Wife's request for attorney fees.

¶ 28 In connection with our remand on the alimony and attorney fees issues, we express no opinion on whether either ultimately should or should not be awarded—that is for the trial court to determine on remand. Rather, we simply determine that it is not apparent from the record before us that the court followed the appropriate analytical path in reaching its conclusion. *See McPherson v. McPherson*, 2013 UT App 302, ¶ 8, 318 P.3d 773, 2013 WL 6838886 (noting that the appellate court's comments on factual issues before remand "were intended to guide and focus the trial court's consideration . . . on an issue [the appellate court] concluded had not been adequately addressed," not "to superimpose any particular findings of fact, limit the sound exercise of the trial court's discretion, or dictate any particular result").

### V. Conclusion

¶ 29 In summary, we affirm the trial court's decision awarding the marital home and custody of Daughter to Husband, and we do not consider Wife's claim that the court failed to award her a portion of Husband's 2011 tax refund because it is unpreserved. However, we set aside the decision denying Wife alimony and attorney fees and remand for the trial court to enter additional findings of fact.