**2016 UT App 206**

THE UTAH COURT OF APPEALS

LD III LLC,
Appellant,
*v.*
BEVERLY JEAN BLACK DAVIS,
Appellee.

Amended Opinion[1]
No. 20140926-CA
Filed September 29, 2016

Fourth District Court, Provo Department
The Honorable Fred D. Howard
No. 080400318

Denver C. Snuffer Jr., Steven R. Paul, Daniel B.
Garriott, and Tahnee L. Hamilton, Attorneys
for Appellant

Michael N. Zundel and James A. Boevers, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
J. FREDERIC VOROS JR. and JUSTICE JOHN A. PEARCE concurred.[2]

---

1. This Amended Opinion replaces the Opinion in Case No. 20140926-CA issued on July 8, 2016. In response to Appellant's petition for rehearing and Appellee's response thereto, revisions were made to footnote 4.

2. Justice John A. Pearce began his work on this case as a judge of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3).

ORME, Judge:

¶1    LD III LLC appeals the district court's finding of contempt and the associated award of damages and attorney fees. We affirm.

BACKGROUND

¶2    This case and these parties are before us for the third time. *See LD III, LLC v. BBRD, LC* (*LD III One*), 2009 UT App 301, 221 P.3d 867; *LD III, LLC v. BBRD, LC* (*LD III Two*), 2013 UT App 115, 303 P.3d 1017. This case has its origins in a real estate purchase contract entered into in 2007 and LD III's ensuing lawsuit. Early in the course of litigation, the defendants sought to enforce a settlement agreement. LD III argued that no such agreement existed because there was no meeting of the minds. *LD III One*, 2009 UT App 301, ¶ 1. The district court granted the defendants' "motion to enforce the settlement agreement and ordered LD III to close the real estate transaction." *Id.* ¶ 12. LD III appealed, and we affirmed. *Id.* ¶ 23.

¶3    In October 2008, prior to our resolution of *LD III One*, one of the defendants, Richard W. Davis,[3] requested that LD III be held in contempt for failure to comply with the district court's order enforcing the settlement agreement. *See LD III Two*, 2013 UT App 115, ¶ 2. A convoluted series of court proceedings ensued, during which our decision in *LD III One* issued, and at the end of which the district court indicated "that it had previously found LD III in contempt" and awarded damages in favor of Davis. *LD III Two*, 2013 UT App 115, ¶¶ 2–10. LD III again appealed, and we reversed, concluding that the "contempt ruling against LD III deprived LD III of its due process rights to

3. Davis is now deceased. The personal representative of his estate, Beverly Jean Black Davis, replaces him in this appeal.

confront witnesses and present evidence and testimony, and [that] the district court failed to enter adequate factual findings on LD III's knowledge, ability to comply with the district court's order, and intentional failure to do so." *Id.* ¶ 21. We remanded for further proceedings. *Id.*

¶4      In April 2014, the district court held an evidentiary hearing, and in June 2014, the court entered findings of fact and conclusions of law in accordance with our instructions in *LD III Two. See id.* ¶ 20. The district court found that on September 23, 2008, it had entered a verbal order granting the motion to enforce the settlement agreement and requiring LD III to comply with that agreement (the September 23 order), which also required LD III to complete its closing obligations by September 30, 2008. The district court further found that the terms of the September 23 order were memorialized in a written order that was served on LD III on September 23, 2008.

¶5      The written order stated, "If LD III does not close the real estate transaction by September 30, 2008, the Court shall quiet title to the subject real property and water rights in Davis." The district court commented in its June 2014 findings that "[b]y advising LD III of a consequence that would follow if it failed to comply with [the district court's] Order, the Court did not mean to give LD III an option not to comply and this was made clear to LD III."

¶6      The district court's June 2014 findings also addressed LD III's knowledge and understanding of the September 23 order. LD III's attorneys received an email from opposing counsel stating, "We are assuming that LD III will close by September 30, as ordered by the Court. If not, LD III will be in contempt of court and we will seek appropriate remedies, along with the remedy set forth in the order." This was just one of several communications between the parties that addressed the

requirements of the September 23 order and the consequences if LD III failed to comply.

¶7     In October 2008, LD III filed a motion to stay pending the appeal in *LD III One*. At a hearing that same month, the district court "observed that because LD III had been ordered to close by September 30, 2008, had failed to do so, and had not sought to stay the order until after the September 30 deadline had expired, LD III could be subject to a contempt citation." The district court, in its June 2014 findings, determined that LD III clearly understood that Davis "could be damaged by a failure to close and, if damage was later proven, that LD III would stand liable for the same" and concluded that "[t]here was no reasonable basis . . . to believe otherwise." So while the district court "granted a stay pending appeal," it "did not make the stay retroactive so as to purge LD III's contempt for earlier refusing to close as ordered."

¶8     The June 2014 findings explicitly state "that LD III knew and understood that the September 23 order required it to close by September 30, 2008." Especially in light of the fact that LD III had originally objected to the quiet title portion of the written order, the district court further found that "[t]here was no reasonable basis for doubt about the meaning of the September 23 Order, and LD III could not reasonably rely, and in fact did not actually rely, upon the quiet title provision as an alternative acceptable to this Court if LD III refused to close by September 30, 2008 as ordered."

¶9     The district court then turned its attention to LD III's ability to comply with the September 23 order. Despite evidence of the minor inconvenience that closing might bring, it found that "LD III had the ability to comply with the September 23, 2008 Order by closing by September 30, 2008 and also after that date."

¶10    Finally, the district court found that LD III's failure to comply with the September 23 order by refusing to close "was willful and intentional." It reinstated the contempt citation against LD III; confirmed the original damages award, *see supra* ¶ 3; and allowed Davis to augment the award with attorney fees, costs, and expenses incurred following our remand in *LD III Two*.

¶11    LD III again appeals.


ISSUES AND STANDARDS OF REVIEW

¶12    We must decide whether the district court properly found LD III in contempt of court and appropriately awarded damages in conjunction with that finding. "An order relating to contempt of court is a matter that rests within the sound discretion of the district court. We accordingly review the sanctions imposed by the district court for an abuse of that discretion." *Wolferts v. Wolferts*, 2013 UT App 235, ¶ 8, 315 P.3d 448 (citations, brackets, and internal quotation marks omitted). "[W]e review [the] district court's findings of fact for clear error" and its legal determinations for correctness. *Valerios Corp. v. Macias*, 2015 UT App 4, ¶ 10, 342 P.3d 1127. Some of the district court's factual findings rely on its conclusion that two witnesses for LD III were not credible. "We will not reverse a trial court's credibility determination unless it is against the clear weight of the evidence or our review leads to a definite and firm conviction that a mistake has been made." *Allen v. Allen*, 2014 UT App 27, ¶ 11, 319 P.3d 770 (citation and internal quotation marks omitted).


ANALYSIS

¶13    We begin by noting that a finding of contempt is proper only when "the person cited for contempt knew what was

required, had the ability to comply, and intentionally failed or refused to do so." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988). LD III challenges, on several grounds, the district court's order including the underlying finding of contempt and the amount of damages and attorney fees awarded. We turn now to a consideration of each of LD III's arguments.

## I. The September 23 Order Did Not Give LD III the Choice Not to Close the Real Property Sale.

¶14 LD III begins its arguments on appeal with the premise that, on remand, "[t]he District Court clarified LD III had the option to close or allow quiet title." It contends that it could not have been in contempt by choosing the latter option and allowing the district court to quiet title. The relevant portion of the September 23 order provides, "If LD III does not close the real estate transaction by September 30, 2008, the Court shall quiet title to the subject real property and water rights in Davis." LD III claims that this language was "mandatory and self effectuating." We are not persuaded.

¶15 In its June 2014 findings, the district court explicitly foreclosed any contention that the September 23 order allowed LD III the option not to close. Instead, the quoted language from the order was meant to "advis[e] LD III of a consequence that would follow if it failed to comply." Our inquiry must therefore focus on whether LD III "knew what was required." *See Von Hake*, 759 P.2d at 1172. The district court found that LD III knew and understood the requirements of the September 23 order, and we cannot say that this finding was clearly erroneous.

¶16 As a preliminary matter, we note that LD III has failed to properly challenge the district court's finding. In fact, LD III's briefs ignore the fact that the district court's finding on this point is contrary to LD III's position. Furthermore, LD III fails to marshal the evidence supporting this finding. *See* Utah R. App. P. 24(a)(9) ("A party challenging a fact finding must first marshal

all record evidence that supports the challenged finding."). Instead, LD III attempts to challenge the finding by simply asserting, "It was never proven that LD III knew what was required or intentionally failed or refused to comply with the September 23 Order. Rather, LD III understood the Order mandated the Court would quiet title." But the district court found that this was not the case, pointing to evidence that LD III's attorney had received an email explaining that if LD III did not "close by September 30, as ordered by the Court[,] . . . LD III will be in contempt of court." Additionally, when LD III elected not to close, it did not indicate that it was choosing a second option, purportedly given to it by the district court, "to object to the proposed order and to appeal the decision."

¶17 The only evidence LD III referenced to support its assertion that it did not understand the September 23 order as the district court later interpreted it was the testimony of two witnesses, which the district court found to be "not credible." Given this determination, other evidence cited by the district court, and LD III's failure to effectively challenge the other evidence or the finding of incredibility, we cannot say that the district court's finding was erroneous. *See Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 17, 989 P.2d 1077 ("A trial court's finding of fact is not clearly erroneous unless it is against the clear weight of the evidence or we reach a definite and clear conclusion that a mistake has been made.").

II. LD III Did Not Purge Its Contempt by Later Offering to Close.

¶18 LD III offers an interesting, albeit self-serving, interpretation of the lengthy proceedings in this case by suggesting that once this court issued its opinion in *LD III One*, "LD III attempted to comply and requested to close the transaction." But any good will that LD III might have displayed following the issuance of our October 2009 decision is immaterial to our present decision.

¶19 The district court's contempt finding and the associated damages award were predicated on LD III's conduct between September 30, 2008, and October 22, 2008. Specifically, LD III refused to close by the September 30, 2008 deadline and continued to refuse until the October 22, 2008 hearing. Then, at that hearing, the district court

> advised LD III that Mr. Davis was still ready, willing and able to close, but LD III nevertheless declined to do so, electing instead to pursue its appeal of the October 9, 2008 Order, to obtain a stay of the quiet title provision of that Order, and to pledge the Property as security for any and all damages Mr. Davis might incur as the result of LD III's decision not to close as ordered.

The district court, "[b]ased on LD III's promise, supported by a bond, to hold Mr. Davis harmless from any damages arising out of LD III's failure to close as ordered . . . granted a stay pending appeal." Importantly, the district court "did not make the stay retroactive so as to purge LD III's contempt for earlier refusing to close as ordered." In the district court's view, then, LD III was in contempt from the moment it failed to close on September 30, 2008, until it obtained a stay pending appeal.

¶20 We reiterate that a district court's finding of contempt is entitled to deference. *See Race v. Race*, 740 P.2d 253, 256 (Utah 1987). In *Race*, the plaintiff was found in contempt for refusing to allow the defendant to visit their children in accordance with the court's order. *Id.* The court informed the plaintiff that she could purge herself of the contempt if she allowed the defendant to visit the children within ten days. *Id.* She did not allow such a visit until eight months had passed. *Id.* The plaintiff argued on appeal that the district court should have dismissed the contempt finding because she had eventually purged her contempt. *Id.* Our Supreme Court affirmed the district court's

refusal to do so, concluding that there was no abuse of discretion given the belated effort at compliance. *See id.*

¶21    In the present case, the district court found that "LD III could have purged itself of the contempt by immediately closing even if closing were later than the September 30 deadline. But LD III resolutely refused to close and also continued to object to the Court quieting title in Mr. Davis." The Supreme Court concluded in *Race* that a district court could acknowledge the contemptuous party's ability to purge her contempt and then find that the party had not done so. *See id.* Similarly, we conclude that it was not error for the district court to find that LD III had not purged its contempt after it continued to refuse to close, having the ability to do so, nor was it improper for the court to then award damages for the period of time before the court issued a stay.[4]

---

4. To clarify, Davis's damages are two-fold. First, he was damaged by LD III's contempt. For this failure, the district court awarded damages tied to the period when LD III was in contempt, namely from September 30, 2008, to October 22, 2008. Second, Davis was further damaged "as the result of LD III's decision not to close as ordered." LD III agreed to indemnify Davis against these damages by pledging the subject property as security "for any and all damages Mr. Davis might incur as the result of LD III's decision not to close as ordered." LD III challenged the first category of damages in *LD III Two* and again in the present appeal. It has not separately challenged the second category of damages, which in any event were not awarded as a contempt sanction, are therefore not before us, and were always intended to be covered pursuant to "LD III's promise, supported by a bond, to hold Mr. Davis harmless from any damages arising out of LD III's failure to close as ordered."

### III. LD III's Contempt Is Not Excused by Its Claimed Reliance on the Advice of Its Attorneys.

¶22    LD III's next argument is somewhat unclear, but we take it to be that any contempt was defensible because LD III relied on the advice of its attorneys in acting as it did.[5] LD III argues that there was insufficient support for a contempt finding. It argues that two of its witnesses established that LD III's attorneys had advised it not to close and instead to allow the district court to quiet title. What LD III fails to mention is that these are the same two witnesses the district court determined not to be credible. So while there might conceivably be a situation in which a party is excused for its contempt because of its reliance on the advice of counsel, this is not such a case. LD III presented no reliable evidence that established this rationale as a defense available to it, and the district court therefore did not err in rejecting the defense.

### IV.  The Damages and Attorney Fees Award Will Not Be Disturbed.

¶23    Finally, LD III argues that the district court erroneously awarded speculative damages and unreasonable attorney fees. Because LD III failed to marshal the evidence supporting the district court's relevant findings, and has otherwise failed to

---

5. At first blush, this argument seems to focus on the sufficiency of the evidence supporting the district court's June 2014 contempt finding. But such an argument would be duplicative of, and thus suffer from the same defects as, the first argument addressed in this opinion. *See supra* ¶¶ 14–17. Instead, with the help of oral argument, we understand this particular challenge to focus more on the defenses asserted by LD III to the contempt charge against it.

meet its burden of persuasion, we decline to disturb the court's award of damages and attorney fees.

A.    Damages Caused by LD III's Contempt

¶24    An award of damages is a function of factual findings and, as such, can be effectively challenged only by negating the evidence supporting the award. *See Lamar v. Lamar*, 2012 UT App 326, ¶ 2, 292 P.3d 86 (per curiam). A party does not meaningfully marshal the evidence by trotting out a litany of the evidence it presented below or otherwise "reargu[ing] the facts that were before the trial court." *See Hi-Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 19, 182 P.3d 417. Rather, the proper focus is on the evidence that supports the challenged findings. *See id.* Although LD III has thoroughly summarized the evidence that supports its position, it neglects to mention any evidence that supports the district court's decision. And LD III cannot discharge its burden of persuasion on appeal without candidly acknowledging the evidence in favor of Davis's position and then demonstrating the inadequacy of that evidence. *See State v. Nielsen*, 2014 UT 10, ¶ 40, 326 P.3d 645 (explaining that "a party who fails to identify and deal with supportive evidence will never persuade an appellate court to reverse under the deferential standard of review that applies" when an appellant challenges "the sufficiency of the evidence to support a factual finding or a verdict").

¶25    This case readily demonstrates the necessity of the precept that the party seeking to show that the findings are inadequately supported by the record bears the burden of leading the tour through the record, which in this case is now a veritable jungle of old briefs, transcripts, affidavits, pleadings, orders, and related ephemera. We will not venture into that jungle unguided, to see if there is some possibility that one or more of the challenged findings might lack evidentiary support. Instead, primarily due to the lack of marshaling, LD III has not

carried its burden of persuasion, and "we affirm the trial court's findings and conclusions regarding . . . damages." *Hi-Country Estates*, 2008 UT App 105, ¶ 20.

B.      Davis's Attorney Fees

¶26     As with the challenge to the district court's award of damages, LD III neglects to marshal the evidence supporting the district court's key findings underlying its award of attorney fees. In addition, its argument on the matter is inadequately briefed. LD III's bald statement that "[t]he billing time and rates were excessive" shifts the burden of research and argument to this court. *See generally State v. Honie*, 2002 UT 4, ¶ 67, 57 P.3d 977 ("[A] reviewing court is not simply a depository in which the appealing party may dump the burden of argument and research."). What rate was excessive? How much time was billed? How much of that time was excessive? We do not know because LD III has not shown us. Instead, we are left to our own devices to peruse the record and see if we can discern some problem with the district court's analysis. This we decline to do. "An appellate court should not be asked to scour the record to save an appeal by remedying the deficiencies of an appellant's brief." *Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 6, 330 P.3d 762. *See* Utah R. App. P. 24(a)(9) ("The argument shall contain the contentions and reasons of the appellant with respect to the issues presented, including the . . . parts of the record relied on.").

CONCLUSION

¶27     We affirm. The district court did not abuse its discretion by finding LD III in contempt. On appeal, LD III fails to successfully challenge the district court's underlying factual findings, and we decline to disturb the award of damages and attorney fees. Because Davis was awarded attorney fees below and is the prevailing party on appeal, he is entitled to an award

of attorney fees reasonably incurred on appeal. *See Hi-Country Estates Homeowners Ass'n v. Jesse Rodney Dansie Living Trust*, 2015 UT App 218, ¶ 12, 359 P.3d 655. We therefore remand to the district court for the limited purpose of calculating the amount of such an award.

———————